**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JASON BAEZ,

        Plaintiff,

v.                                                                    Case No. 3:25-cv-788-WWB-MCR

REGISTERED NURSE JASON
HOWELL, et al.,

        Defendants.

_____

**<u>ORDER</u>**

THIS CAUSE is before the Court on Defendants' Motion to Dismiss (Doc. 31) and

Plaintiff's Response (Doc. 44) thereto.  For the following reasons, the Motion to Dismiss

will be granted in part and denied in part.

**I.      PLAINTIFF'S ALLEGATIONS**

Plaintiff Jason Baez, an inmate of the Florida Department of Corrections ("**FDOC**"),

is proceeding pro se and in forma pauperis on a verified First Amended Complaint

("**Amended Complaint**," Doc. 18[1]), filed under 42 U.S.C. § 1983.  Plaintiff sues the

following Defendants in their individual[2] capacities: (1) Registered Nurse Jason Howell

("**Nurse Howell**"); (2) Captain Jesus Camacho ("**Camacho**"); (3) Captain Regina R.

Ratliff ("**Ratliff**"); (4) Lieutenant Supervisor William B. Boone ("**Boone**"); (5) Lieutenant

Supervisor Alton McDonald ("**McDonald**"); (6) Correctional Officer Joseph Finney

---

[1] Attached to the Amended Complaint are Plaintiff's Sworn Affidavit (Doc. 18-1) and Amended Verification and Declaration (Doc. 18-2).

[2] Plaintiff's official-capacity claims against all Defendants were dismissed without prejudice on April 3, 2026.  (*See* Doc. 38).

("**Finney**"); (7) Correctional Officer Jacob G. Manning ("**Manning**"); (8) Correctional Officer Thomas A. Fortescue ("**Fortescue**"); and (9) Lieutenant Supervisor David Duckwiler ("**Duckwiler**").[3]  (Doc. 18 at 2–3).

In Plaintiff's own words, he "was sexually harassed [and] abused by two officers and tried reporting them to no avail[,] and suffered being gassed and terribly beaten, and also denied a shower without any medical attention whatsoever." (Doc. 44 at 14).  Plaintiff alleges the events happened at Suwannee Correctional Institution ("**Suwannee C.I.**") on August 14, 2022.  (Doc. 18 at 4; *see also* Doc. 18-1 at 1; Doc. 18-2 at 1–3).  Plaintiff alleges the following "Facts":

> 4. On August 14, 2022, Plaintiff was escorted to Suwannee [C.I.] Annex P-Dorm . . . by Boone, who[] worked [the 4:00 p.m. to 12:00 a.m.] shift.
>
> 5. On the way to confinement[,] Plaintiff asked Boone if [they could] bypass [the] medical pre-confinement assessment in order to be able to use the restroom and drink some water as soon as [they arrived at] P-dorm[,] [to] which Boone agreed.
>
> 6. When Plaintiff arrived at P-Dorm[,] Boone placed Plaintiff inside a holding cell and denied him [access] to . . . the restroom.
>
> 7. Plaintiff couldn't hold [him]self from urinating[,] so he urinated on the clothes he was wearing.
>
> 8. Plaintiff got urine on the floor[,] and Boone got angry.
>
> Racial Discrimination
>
> 9. Boone called Plaintiff "you dirty spic," and Boone is a white male [whereas] Plaintiff is a Hispanic male.

---

[3] The present Motion is filed on behalf of all Defendants, except Nurse Howell. (Doc. 31).  Nurse Howell's Motion to Dismiss (Doc. 49) will be addressed separately.

### Sexual Abuse/Harassment

10. Boone kept arguing and threatening Plaintiff to [sic] where Boone went inside his office and began making lewd and lascivious gestures at Plaintiff with his hands as if he was masturbating at Plaintiff.

11. Finney entered . . . [the] P-Dorm cell[-]front and began disrespecting Plaintiff with homosexual sayings[,] . . . stepped into the hallway laundry room[,] and pulled his penis and began to stroke it in a back[-]and[-]forth motion.

### Failure to Act

12. As soon as Camacho arrived [at] P-Dorm[,] Plaintiff explained what [had] transpired[,] and Camacho did not want to address [Plaintiff's Prison Rape Elimination Act ("**PREA**")] allegation[,] which is Plaintiff's right[,] especially being a registered transgender at the time.

13. Plaintiff was asked to submit to hand restraints[,] at which time Plaintiff advised Camacho that as soon as he allow[ed] Plaintiff . . . to report these sexual harassments and lewd [and] lascivious acts by his subordinate officers [sic].  Instead[,] Camacho refused . . . .

14. Ratliff came into P-Dorm trying to get Plaintiff to cuff up[,] and when Plaintiff tried explaining his allegations of the serious misconduct, she also refused to do her duty.

### Threats of Harm

15. Camacho got angry and threatened "to beat my ass" [and] "gas me," meaning he'd use chemical agents on Plaintiff.

16. Plaintiff is a disabled prisoner with only one eye,[4] and also a seizure patient on [Keppra medication] with multiple mental health disorders.

17. Camacho and Ratliff used [three] big canisters of chemical agents on Plaintiff while totally defenseless in a small holding cell.

18. Camacho carried out his threat "to gas me" and ordered a five[-]man cell extraction riot team, with helmets, padded elbows, knees, vests, boots, [and] with a huge shield to enter Plaintiff's cell and use excessive force by ramming Plaintiff's head against the wall and bench as well as stomping [on] both of Plaintiff's feet.

---

4 Plaintiff alleges he is permanently blind in one eye.  (Doc. 18 at 11–12).

## Misuse of Force

19. Camacho gave the order for the extraction team to be formed[,] allowing Boone to open the holding cell door[,] and watched team members enter and misuse force on Plaintiff.

20. McDonald was the shield man who[] earlier threatened to use a stun gun (taser) [on] Plaintiff and [who] also lost Plaintiff's personal property on purpose that same night.

21. Camacho and Ratliff both allowed Finney to participate as the third cell team member after Plaintiff reported sexual misconduct against Finney[,] which was a violation.

22. McDonald hit Plaintiff with the shield so hard [that] Plaintiff saw stars and felt like his shoulder broke.

23. Camacho [began] screaming "stop resisting[,]" which is the signal letting team members know the camera is blocked and unable to see clearly into the cell.

24. McDonald, Manning[,] and Finney then began to punch, kick, [and] elbow Plaintiff all over[,] while also slamming his head against the walls [and] stomping on Plaintiff's feet[,] causing the los[s] of three . . . toenails.

25. McDonald, Manning[,] and Finney rammed Plaintiff's head against the walls and metal bench numerous times causing [four] big, deep . . . lacerations to the back of Plaintiff's head[,] which needed stitches and immediate medical attention, but to no avail.

26. Camacho, Ratliff, Fortescue[,] and Duckwiler stood by and watched this beating and did nothing to stop this brutal assault.

27. Once these Defendants placed restraints on Plaintiff[,] Camacho ordered someone to place a tight spit shield over Plaintiff's head to hide the injuries from possible eyewitnesses[,] which is routine whenever excessive force is used.

28. Plaintiff complied with all . . . orders and [was] escorted to wing #2 for a decontamination shower[,] which Defendants never planned to allow him to take on his own free will.

## Denial of Decontamination Shower

29. Both Camacho and Ratliff denied Plaintiff a decontamination shower after just using [three] big canisters of chemical agents on Plaintiff in fear

4

that Plaintiff would become disorderly once the restraints were removed and made up an excuse to deny a decontamination shower.

## Water[-Boarding]

30. Camacho and Ratliff ordered Manning and Fortescue to pour water over Plaintiff's head with a hose[,] while Plaintiff was cuffed and wearing a tight spit shield, blinded in pain and unable to breathe[,] in fear for his life[,] chocking from the gas all over his head[,] face[,] and eyes, thus destroying [his] personal clothing[,] torturing Plaintiff and denying him a policy[-]and[-]procedure shower[,] while Plaintiff was following all orders and not resisting.

31. Both Camacho and Ratliff ordered team members to cut off all of Plaintiff's brand[-]new personal clothing[,] including throwing out his brand[-]new shoes[,] right in front of male and female officers[,] as well as in front of the inmate wing population for all to see Plaintiff "butt naked[,]" knowing that Plaintiff was a registered transgender with a pass to be pat[-]frisked by female officers only and [to] shower alone[,] which was in fact authorized by the warden and classification.

32. Nurse Howell allowed security to commit these violations and did nothing to intervene[,] which is clearly a violation of privacy.

## Denial of Medical Care[]

33. Nurse Howell ordered security to spin Plaintiff around "butt naked" on the hand[-]held camera in front of the whole wing #2 inmate population, male and female officers to view him[,] violating his right to privacy[,] which should have been done in medical per policy[,] and allow[ed] Plaintiff to be recorded "butt naked" on video footage[,] without ever giving security and Defendants any instructions to remove the spit shield[,] which was clearly drenched in blood[,] and didn't log down any of Plaintiff's injuries until the following day whe[n] he had to be taken to the infirmary for medical attention and evaluation[,] [at which time the injuries were] logged down . . . . Plaintiff suffered contusions to the face and eyes, bruises all over the body from head to toes, [four] deep lacerations to the back of the head[,] which needed to be stitched, bloodied nose, lips, injured shoulder, and the loss of [three] toenails[,] which was very painful.

34. Plaintiff was then escorted to wing #1 where he was placed inside of an empty cell without anything to cover up with[,] left cold[,] and bleeding profusely all night to the point of unconsciousness two times from loss of blood.

35. Plaintiff lost so much blood that the midnight shift officers placed sandbags in front of his cell[,] trying to stop the blood from leaking under the cell door for the camera to view the mess[,] leaving him for dead.

36. Nurse Howell was supposed to have security bring [Plaintiff] to medical [according to the] procedure for privacy and [do] a post use[-]of[-]force assessment[,] which he clearly failed to do[,] in order to log down all injuries, call the provider for further and immediate medical treatment[,] and have my head wounds sutured, but to no avail[,] [instead,] leaving me in terrible pain and anguish with[out] any pain medication whatsoever.

37. Plaintiff notified the [12:00 a.m. to 8:00 a.m.] shift officers that he needed medical attention due to his injuries[,] which would not stop bleeding[,] and Nurse Howell denied Plaintiff any medical care[,] but instead left him to bleed out to the point of going unconscious twice during the night[,] waking [up] in a pool of blood in a cold cell without a suicide blanket to cover up with[,] which is policy.

38. Plaintiff was denied his breakfast meal by [the 12:00 a.m. to 8:00 a.m.] shift officials who[] were all nasty toward Plaintiff[,] as well as [by the 8:00 a.m. to 4:00 p.m.] shift officials Batton and Sgt. Whom [who] denied him lunch as retaliation for reporting staff abuse.

39. Plaintiff was taken to the infirmary the following day of August 15, 2022[,] where he was seen by medical who[] advised Plaintiff that sutures could not be applied to the serious injuries and lacerations to the back of the head due to medical waiting longer than [four] hours, therefore causing them to heal on their own [and] leaving huge ugly scars on the back of Plaintiff's head.

40. While in the infirmary for [nine] days[,] Plaintiff lost three . . . toenails from the excessive force[,] which caused excruciating pain from [his] feet being stomped [on].

41. On August 25, 2022[,] Plaintiff was seen by medical at Lake Correctional Institution [("**Lake C.I.**")] mental health hospital[,] where nursing staff reported and documented his injuries.

42. While at Lake C.I.[,] Plaintiff reported his injuries to medical and security[,] who[] documented all injuries, took photos of his injuries[,] and allowed Plaintiff to report [the] sexual[] abuse and speak to the inspector general.

(Doc. 18 at 4–10 (names abbreviated)).

6

In his "Statement of Claim," Plaintiff alleges as follows. Plaintiff was viciously assaulted, and suffered serious physical and emotional injuries, because he tried to report the lewd and lascivious conduct of Boone and Finney. (*Id.* at 12). Camacho and Ratliff did not allow Plaintiff to report Boone and Finney's conduct, and failed to intervene when their subordinates rammed Plaintiff's head against the wall and steel bench maliciously and sadistically. (*Id.* at 11). Camacho threatened to "beat Plaintiff's ass" if he did not submit to hand restraints, and allowed Finney to participate in the cell extraction and use excessive force on Plaintiff, knowing of Plaintiff's PREA-related allegations against Finney. (*Id.*). Camacho and Ratliff did not allow Plaintiff to use a decontamination shower and instead gave orders to water-board Plaintiff with a hose, while Plaintiff was fully clothed, covered with a tight spit shield, and unable to breathe. (*Id.* at 11–12). Then, knowing that Plaintiff was a registered transgender, Camacho and Ratliff ordered that Plaintiff's clothing be removed in front of the entire wing population, leaving Plaintiff "butt naked" and humiliated. (*Id.* at 12). McDonald, Finney, Manning, Fortescue, and Duckwiler used excessive force on Plaintiff without any need or provocation, and/or failed to intervene in the use of force. (*Id.* at 12–13). Nurse Howell refused to authorize security to remove Plaintiff's blood-soaked spit shield to see where the blood was coming from, refused to provide a medical assessment, refused to document his injuries, and refused to provide adequate medical care. (*Id.* at 13). As relief, Plaintiff seeks compensatory and punitive damages, declaratory relief, and a permanent restraining order[5] against all Defendants. (*Id.* at 4, 14–16).

---

[5] Part of the requested injunctive relief is against Boone, Finney, Camacho, Ratliff, McDonald, Manning, Fortescue, and Duckwiler, but not against Nurse Howell. (Doc. 18 at 15).

## II.    LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party.  *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).  Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## III.    ANALYSIS

### A.    Initial Observations and Conclusions

With the benefit of liberal construction, Plaintiff's Amended Complaint alleges the following claims:

(1) excessive use of force against Camacho and Ratliff (for using chemical agents without justification, and then ordering the cell extraction team to use excessive force and

8

water-board Plaintiff), McDonald (for punching, elbowing, and kicking Plaintiff, hitting him with the shield, ramming his head against the wall and steel bench, and stomping on his feet during the cell extraction), Finney and Duckwiler (for punching, elbowing, and kicking Plaintiff, ramming his head against the wall and steel bench, and stomping on his feet during the cell extraction), and Manning and Fortescue (for punching, elbowing, and kicking Plaintiff, ramming his head against the wall and steel bench, and stomping on his feet during the cell extraction, and then water-boarding him with a hose);

(2) failure to protect or intervene against Camacho and Ratliff (for allowing Finney to participate in the cell extraction, knowing that Finney and Boone had just sexually harassed Plaintiff; allowing the cell extraction team to use excessive force; and authorizing the water-boarding and removal of Plaintiff's clothes, knowing that he was a registered transgender); McDonald, Finney, Manning, Fortescue, and Duckwiler (for failing to intervene in the assault and battery during the cell extraction); and Nurse Howell (for failing to intervene in the other Defendants' violations);

(3) deliberate indifference against Camacho and Ratliff (for unjustifiably denying Plaintiff a decontamination shower);

(4) sexual harassment against Finney (for making homosexual remarks, exposing his penis, and stroking it in front of Plaintiff), and Camacho and Ratliff (for ordering the removal of Plaintiff's clothing in front of the entire wing population);

(5) assault and battery against McDonald, Finney, Manning, Fortescue, and Duckwiler (for their conduct during the cell extraction); and

(6) medical deliberate indifference against Nurse Howell (for failure to provide a medical assessment, document Plaintiff's injuries, and provide adequate medical care

9

post use of force, and then leaving Plaintiff to bleed out to the point of unconsciousness twice).  (*See generally* Doc. 18).

The Court considers Plaintiff's general allegations of negligence and threats of violence by Camacho and McDonald to be part of Plaintiff's deliberate indifference claims; as such, the Court does not separately address Defendants' arguments for the dismissal of these allegations.  (*See* Doc. 31 at 6–7).  Also, the Court does not address Defendants' arguments for dismissal of any retaliation claim, premised on Defendants' conduct on August 14–15, 2022, and motivated by Plaintiff's earlier reports of staff abuse and sexual harassment, because Plaintiff admits that he "did not make a retaliation claim."  (Doc. 44 at 14).  To the extent Plaintiff alleges he was denied breakfast and lunch on August 15, 2022, by "shift officials," such as Batton and Sgt. Whom, "as retaliation for reporting staff abuse," (Doc. 18 at 10), the "shift officials" are not named as Defendants in this action.  If Plaintiff believes he can state a claim for retaliation against any of the named Defendants, (*see* Doc. 44 at 14–15, 21; *see also* Doc. 18-1 at 1), he may file an appropriate motion in accordance with all applicable rules and law.  Requests for affirmative relief in response to a motion are improper.  *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion."); M.D. Fla. R. 3.01(b) (providing that a motion must be supported by a memorandum of law); M.D. Fla. R. 3.01(g) (providing that before filing most motions, a party must confer with the opposing parties in a good faith effort to resolve the motion).  However, if the retaliation claim is unrelated to the claims raised in this action, Plaintiff should bring it in a separate action.  Further, to the extent the Amended Complaint raises claims for sexual harassment and racial discrimination against Boone (for making lewd and lascivious gestures as if he was masturbating at Plaintiff, and calling Plaintiff a "dirty

10

spic"), for failure to allow Plaintiff to report PREA-related allegations against Camacho and Ratliff, and for personal property deprivation against McDonald, Manning, Fortescue, Camacho, and Ratliff (for the loss or destruction of Plaintiff's clothing and shoes), the Court will dismiss these claims without prejudice as follows.

First, Plaintiff fails to state a claim for sexual harassment and racial discrimination against Boone.  Plaintiff alleges that Boone called him a "dirty spic," and made lewd and lascivious gestures at him as if Boone was masturbating.  However, a correctional officer's verbal threats and gestures of sexual harassment, without more, do not rise to the level of a constitutional violation.  *Watkins v. Azael*, No. 22-11648, 2023 WL 4422527, at *7 (11th Cir. July 10, 2023)[6]; *see also Edwards v. Gilbert*, 867 F.2d 1271, 1273 n.1 (11th Cir. 1989) (stating that "verbal taunts . . . [h]owever distressing" cannot establish a claim under the Eighth Amendment); *Barfield v. Hetzel*, No. 2:11-cv-1114, 2015 WL 758490, at *4 (M.D. Ala. Feb. 23, 2015)[7] ("Derogatory, demeaning, profane, threatening or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation."); *Russell v. Walton Cnty. Sheriff's Dep't*, No. 3:11-cv-5, 2011 WL 794146, at *3 (M.D. Ga. Mar. 1, 2011) ("Threats, cursing, name-calling, and verbal abuse, while unprofessional and reprehensible, do not amount to the violation of a federal constitutional right."); *Pete's*

---

[6] Any unpublished decisions cited in this Order are deemed persuasive authority on the relevant point of law.  *See McNamara v. GEICO*, 30 F.4th 1055, 1061 (11th Cir. 2022).

[7] Although decisions of other district courts are not binding, they may be cited as persuasive authority.  *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) ("Although a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

*Towing Co. v. City of Tampa*, 648 F. Supp. 2d 1276, 1287 (M.D. Fla. 2009) (stating that "verbal threats and harassment are generally not actionable under § 1983"). Therefore, Plaintiff's claims of sexual harassment and racial discrimination against Boone will be dismissed without prejudice.

To the extent Defendants argue that Plaintiff's sexual harassment claim against Finney should be dismissed for the same reasons, the Court disagrees. (Doc. 31 at 16–17). Accepting as true Plaintiff's allegations that Finney not only made homosexual remarks, but also exposed his penis and began stroking it in front of Plaintiff, the Court will allow Plaintiff's claim against Finney to proceed. While Defendants speculate that the officers' gestures towards their genitalia "likely relate" to Plaintiff "urinating on himself as opposed to a sexual reference," Defendants admit that Plaintiff's interaction with Finney is not caught on video, and that the Court must accept Plaintiff's version of the events as true. (*Id.* at 16 & n.4).

Next, to the extent any of Plaintiff's claims are premised on the PREA, 42 U.S.C. § 15601 *et seq.*, Plaintiff is advised that the PREA does not create a private cause of action. *See, e.g.*, *Edwards v. Sewell*, No. 2:21-CV-79, 2024 WL 629973, at *4 (M.D. Ala. Jan. 23, 2024) ("Courts have uniformly held that the PREA does not create a private cause of action."), *rep. & recommendation adopted*, 2024 WL 627984 (M.D. Ala. Feb. 14, 2024); *A.G. v. Riverside Christian Ministries, Inc.*, No. 23-cv-22776, 2023 WL 6443118, at *5 (S.D. Fla. Oct. 3, 2023) ("Although the Eleventh Circuit hasn't yet opined on whether the PREA creates a private right of action, many district courts in this Circuit (and others) have held that it does not. And every federal circuit court to have passed on this question has likewise held that the PREA *doesn't* establish a private cause of action." (citations

omitted); *Jacoby v. PREA Coordinator*, No. 5:17-cv-53, 2017 WL 2962858, *7 (N.D. Ala. Apr. 4, 2017) (concluding that plaintiff's "claims based on the PREA and failure to investigate, report, and prosecute claims should all be dismissed," because "plaintiff has no protected interest or right to have alleged wrongdoers investigated or prosecuted"), *rep. & recommendation adopted*, 2017 WL 2957825, *1 (N.D. Ala. July 11, 2017).

To the extent Plaintiff alleges that Camacho and Ratliff failed to allow him to report his PREA-related allegations about Boone and Finney to trigger an investigation, such allegations do not give rise to a constitutional violation. *See Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) (finding no constitutional right to an investigation of an excessive-force complaint), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *Jacoby*, 2017 WL 2962858, at *5 ("The failure or refusal to investigate a prisoner's complaints creates no liability under § 1983."); *Fulmore v. Andre*, No. 8:12-cv-1705-T, 2012 WL 4856938, at *3 n.8 (M.D. Fla. Oct. 12, 2012) ("[P]risoners do not have a constitutional right to any specific kind of investigation by prison officials.").

Finally, while Defendants' Motion does not address Plaintiff's claims of personal property deprivation, such claims will be dismissed without prejudice because Plaintiff's remedy is in state court. The Due Process Clause is not violated when a state employee intentionally deprives an individual of his property as long as the State provides him with a meaningful post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Jackson v. Hill*, 569 F. App'x 697, 698 (11th Cir. 2014); *Taylor v. McSwain*, 335 F. App'x 32, 34 (11th Cir. 2009). Plaintiff has an adequate post-deprivation remedy under Florida law because he can sue Defendants for conversion. *Jackson*, 569 F. App'x at 698 (citing *Case v. Eslinger*, 555 F.3d 1317, 1331 (11th Cir. 2009)).

13

### B. Excessive Force and Related Claims

Defendants argue that Plaintiff has failed to establish claims of excessive force and failure to protect or intervene, or "any facts that overcome Defendants' entitlement to qualified immunity." (Doc. 31 at 1, 7–8). To support their Motion, Defendants submit two videos that they believe "clearly depict[] the events that are central to Plaintiff's claim." (*Id.* at 9). Defendants argue the videos should be incorporated into the Amended Complaint based on the "incorporation by reference" doctrine.[8] (*Id.* at 8–10).

Even if the videos are incorporated into the pleading, they depict only some of the events alleged in the Amended Complaint.[9] (*See* Doc. Nos. 31-1, 33). At most, the videos capture what happened between 11:11 p.m. on August 14, 2022, and 12:40 a.m. on August 15, 2022. (*See id.*). The first video, which is 50:57 minutes, shows that Plaintiff was ordered to submit to hand restraints, he refused and was sprayed with chemical agents three times, and then preparations commenced for a cell extraction. (*Id.*). The second video, which is 25:55 minutes, shows the cell extraction from a distance; the

---

[8] Generally, a court should not consider extrinsic evidence when ruling on a motion to dismiss. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). However, a court may consider extrinsic evidence when ruling on a Rule 12(b)(6) motion if a document incorporated by reference in the complaint "is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)); *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal.").

[9] Both videos, particularly the shorter one, repeatedly skip backwards, making it very difficult to follow the events. If Defendants intend to rely on these videos in the future, they should make every effort to provide the Court and Plaintiff with new copies of the same.

14

placement of a spit shield on Plaintiff's head; the washing of Plaintiff's body with a hose, which seemed to occur in a hallway, while Plaintiff was still wearing his pants, shoes, and the spit shield; the removal of Plaintiff's clothing and shoes at the same spot; the placement of a one-piece "turtle suit" over Plaintiff's naked body; Plaintiff's brief medical assessment by a male nurse; and Plaintiff's placement in a cell. (*Id.*).

Based on these videos, Defendants ask the Court to conclude that the "[u]ndisputed video evidence demonstrates that the force used during [Plaintiff's] August 14, 2022, cell extraction and before[,] was reasonably necessary under the circumstances." (Doc. 31 at 11). Importantly, however, the videos do not seem to cover the entirety of Plaintiff's interactions with Defendants on the night of August 14, 2022.[10] For the interactions that are captured on video, the conversations are sometimes inaudible, and the parties are sometimes hard to identify either due to their protective gear, location, distance, or because the camera points elsewhere (e.g., when Plaintiff was naked). Additionally, Plaintiff points out that most of the video footage depicting the events on August 14, 2022, is missing, because the battery of the camera died as soon as the cell extraction team entered the cell. (Doc. 44 at 2, 6, 12). In his affidavit, Plaintiff avers that the dead battery is the reason why the video footage "goes from [the officers] entering the cell and skips to [where] the officers [are] on the ground on top of [Plaintiff] blocking [the] view of what[']s going on." (*Id.* at 21).

Accepting Plaintiff's averments and factual allegations as true, the Court will allow Plaintiff's deliberate indifference claims for Defendants' excessive use of force, failure to

---

[10] If the Court is mistaken, Defendants may present declarations or other evidence to support their positions.

protect or intervene, and denial of a decontamination shower, as well as the related state-law claims of assault and battery, to proceed. On the current record, the Court cannot determine whether the two videos support Defendants' view of the facts.[11] Thus, to the extent Defendants seek dismissal of these claims, Defendants' Motion will be denied.

Defendants' Motion will also be denied to the extent it raises the defense of qualified immunity. Defendants argue, without much elaboration, that they are entitled to qualified immunity because:

> Defendants were all performing their duties at the time of the allegations in Plaintiff's complaint and deny that they violated Plaintiff's constitutional rights. . . . .

> It is beyond dispute that the officers were acting within their corrections enforcement functions. Thus, the burden shifts to Baez to demonstrate that qualified immunity is not appropriate.

(Doc. 31 at 15–16).

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation omitted). "The question is 'whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Hargis v. City of Orlando*, No. 6:12-cv-723-Orl, 2012 WL 6089715, at *3 (M.D. Fla. Dec. 7, 2012) (quoting *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006)).

---

[11] While Defendants seemingly ask the Court to assume that the force used was reasonable and that Plaintiff was "immediately combative" upon the officers' entry, Defendants admit that Plaintiff cannot be seen because the officers' bodies are blocking the camera, and that even the officers "cannot be seen fully on camera" during the cell extraction. (Doc. 31 at 10, 12 & n.3).

16

There is no dispute that Defendants were acting within their discretionary duties as correctional officers during the events underlying Plaintiff's claims. Thus, the burden shifts to Plaintiff to sufficiently allege that Defendants "(1) violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). "For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In the context of an excessive force claim, courts "may find fair warning in the law without also finding a factually identical case." *Id.* at 1312.

"Under the Eighth Amendment, force is deemed legitimate in a custodial setting if it is 'applied in a good-faith effort to maintain or restore discipline' and not 'maliciously and sadistically to cause harm.'" *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). "This standard requires a prisoner to establish two elements – one subjective and one objective: the official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (quoting *Hudson*, 503 U.S. at 8). "In determining whether force was used 'maliciously and sadistically,' [courts] consider: (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of the injury inflicted upon the prisoner'; (4) 'the extent of the threat to the safety of staff and inmates'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Sears*, 922 F.3d at 1205 (*Cockrell*

17

*v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007)).  Additionally, "[a]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance."  *Williams v. Radford*, 64 F.4th 1185, 1199 (11th Cir. 2023) (quoting *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007)).

The Court notes that although "the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss."  *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).  "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'"  *Corbitt*, 929 F.3d at 1311 (quoting *St. George*, 285 F.3d at 1337).

Here, at the time of the alleged events (August 2022), it was clearly established that "government officials may not use gratuitous force against a prisoner who has been already subdued."  *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002); *see also* W*illiams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991) ("The basic legal principle is that once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth and Fourteenth Amendments, and any abuse directed at the prisoner after he terminates his resistance to authority is an Eighth Amendment violation.").  It was also clearly established that failing to intervene in a use of excessive force violates the Eighth Amendment.  *See Velazquez*, 484 F.3d at 1341 ("The law of this circuit is that 'an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.'" (quoting *Skrtich*, 280 F.3d at 1302)).  Accepting Plaintiff's allegations as

18

true, he has sufficiently alleged violations of his clearly established constitutional rights. While Defendants may be entitled to qualified immunity after further factual development, at this stage of the proceeding, their request is denied.

### C. Declaratory Relief

Defendants argue that Plaintiff's requests for declaratory and injunctive relief should be dismissed as moot, because Plaintiff was housed at another institution at the time he filed this action. (Doc. 31 at 18). The Court agrees that Plaintiff's requests for declaratory and injunctive relief have been rendered moot by virtue of his transfer. *See Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (finding that a prisoner's requests for injunctive and declaratory relief relating to the conditions of his confinement were rendered moot by the prisoner's transfer to a different facility). Thus, the Court will dismiss without prejudice Plaintiff's requests for declaratory and injunctive relief relating to the conditions of his confinement at Suwannee C.I.

## IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants' Motion to Dismiss (Doc. 31) is **GRANTED** only to the extent the Court dismisses without prejudice Plaintiff's claims for failure to allow reporting of Plaintiff's PREA-related allegations against Camacho and Ratliff, sexual harassment and racial discrimination against Boone, and personal property deprivation against McDonald, Manning, Fortescue, Camacho, and Ratliff, as well as Plaintiff's requests for declaratory and injunctive relief. In all other respects, the Motion is **DENIED**.

2.  The following claims remain: excessive use of force against Camacho, Ratliff, McDonald, Finney, Duckwiler, Manning, and Fortescue; failure to protect or intervene against Camacho, Ratliff, McDonald, Finney, Duckwiler, Manning, Fortescue, and Nurse Howell[12]; denial of a decontamination shower against Camacho and Ratliff; assault and battery against McDonald, Finney, Manning, Fortescue, and Duckwiler; sexual harassment against Finney, Camacho, and Ratliff; and medical deliberate indifference against Nurse Howell.

3.  Defendants Camacho, Ratliff, McDonald, Finney, Duckwiler, Manning, and Fortescue shall file an answer to the Amended Complaint within **twenty-one days** from the date of this Order.

4.  A separate order setting case management deadlines will be entered after the Court rules on Nurse Howell's Motion to Dismiss.

**DONE AND ORDERED** in Jacksonville, Florida, on July 14, 2026.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Jax-11

c:      Jason Baez, #169800
        Counsel of Record

---

[12] The Court has not yet addressed the claims against Nurse Howell.  (*See* Doc. 49).

20